IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SANDRA S.,[1]                                    )
                                                 )
                    Plaintiff,                   )
                                                 )
v.                                               )    Case No. 24-cv-2461-RJD[2]
                                                 )
COMMISSIONER of SOCIAL SECURITY,                 )
                                                 )
                    Defendant.                   )
                                                 )

## ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in April 2022, alleging an onset date of October 31, 2020.   Tr. 17.   After holding an evidentiary hearing on April 25, 2024, ALJ Michael Scurry denied the application.   Tr. 29, 33.   The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and subject to judicial review.   Tr. 1.   Plaintiff filed a timely Complaint with this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Order due to privacy concerns. *See* Advisory Committee Notes to Fed. R. Civ. P. 5.2(c).

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties.   Docs. 10, 20.

**Issues Raised by Plaintiff**

Plaintiff makes the following arguments:

1.  The ALJ erred in formulating Plaintiff's residual functional capacity ("RFC").

2.  The ALJ erred by finding Plaintiff capable of performing past work as a server.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   A person is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) is the claimant doing substantial gainful activity?; (2) does the claimant have a severe medically determinable physical or mental impairment?; (3) does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?; (4) is the claimant able to perform his former occupation?; and (5) is the claimant able to perform any other work?   20 C.F.R. § 404.1520(a)(4).   An affirmative answer at step 1 or step 4 or step 5 precludes a finding of disability.   *Id*.

This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   *Tutweiler v. Kijakazi*, 87 F. 4th 853, 857 (7th Cir. 2023) (internal citations and quotations omitted).   Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Id.*   In

Page **2** of **7**

reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2023) (internal citations and quotations omitted).    However, the undersigned does not act as a rubber stamp for the Commissioner.  *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). There must be a "logical bridge" between the ALJ's conclusion and the evidence.  *Hess v. O'Malley*, 92 F. 4th 671, 676-77 (7th Cir. 2024) (*citing Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)).

## The Decision of the ALJ

The ALJ followed the required five-step analytical framework.  He determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of October 31, 2020.  Tr. 19.  He determined that Plaintiff had the following severe impairments through the last date insured: degenerative disc disease, degenerative joint disease, obesity, fibromyalgia, interstitial cystitis, obsessive-compulsive disorder, depressive disorder, and generalized anxiety disorder.  Tr. 19.  However, he found that Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" in the applicable regulations.  Tr. 19.

> The ALJ determined that Plaintiff had the following RFC:
>
> Perform light work…except never climbing ladders, ropes and/or scaffolds; occasionally crouching and crawling; frequently balancing, stooping, and kneeling; and must avoid concentrated exposure to hazards such as unprotected heights; can understand, remember, and apply information for detailed, less-than-complex tasks, and can concentrate, persist, maintain pace, and tolerate such changes for tasks in a detailed setting.

Tr. 22.  The ALJ concluded that Plaintiff was capable of performing past relevant work.  Tr. 33.

## The Evidentiary Record

The following summary of the record is tailored to Plaintiff's arguments.

### 1.    Medical records

Plaintiff treated with a physician assistant ("PA") from November 2020-April 2021 for chronic and "worsening" interstitial cystitis symptoms of "difficulty urinating, dysuria, frequency, hematuria (microscopic) and urgency" and "burning sensation in bladder."    Tr. 536, 540, 542, 552.   The PA prescribed multiple medications: Vesicare, Elavil, Ditropan, Flomax, Tramadol, and Doxycyline (for "IC flare-up").   Tr. 538, 542, 546, 550.    The PA noted "very minimal improvement with Vesicare" on April 8, 2021 and increased her dosage.  Tr.  555.   Previously, Plaintiff had tried other medications and "instillation therapy."   Tr. 539.   The instillation therapy made her symptoms worse and the other medications had negative side effects and/or were not effective.   Tr. 539.

Plaintiff underwent a cystoscopy with bladder dilation and hydrodistension on March 4, 2021.   Tr. 550.   She reported "better urine flow since having procedure done.   Still with moderate pain and frequency/urgency."   Tr. 550.

Plaintiff reported frequent urination and painful urination from October 2021-August 2022 while treating at a pain management clinic.   Tr. 846, 858, 870, 878, 886.   She was undergoing physical therapy for her bladder.   Tr. 884.

In April 2023, Plaintiff saw a urogynecologist at Washington University.   The doctor recommended "InterStim as a way to manage [Plaintiff's] refractory urinary frequency and urgency."   Plaintiff agreed.   Tr. 1537.   Approximately one month after the InterStim Procedure, Plaintiff reported "twitching in her anal area" and had some drainage from the surgical wound.

Page **4** of **7**

Tr. 1553.   She also reported that "her frequency symptoms have improved significantly but still

has some urgency.'   Tr. 1553.

### 2.    Agency Records

Plaintiff completed a function report on October 29, 2022.   Tr. 210-218.   She reported

that she took "20+ bathroom trips per day due to bladder pain and urinary frequency and urgency."

Tr. 211.   She also explained that she had "tried many bladder frequency and urgency medications.

They caused urinary retention."   She had tried hydrodistention that "made things hurt worse" and

underwent "PT for pelvic floor."   The medications she had tried (Gabapentin, Lyrica, Elmiron,

Amitryptyline) all had "unmanageable side effects."   Tr. 218.

### 3.    Evidentiary Hearing

The ALJ conducted an evidentiary hearing on April 25, 2024.   Plaintiff testified that

within the last year she underwent an "InterStim" procedure but "fe[lt] no different" other than a

negative side effect of "the whole groin area…twitches constantly."   Tr. 53.   She further testified

that she had to urinate "25 plus times a day."   Tr. 56.   In some instances, it would take her 5-10

minutes to void.   Tr. 56.

Plaintiff testified that she had previously worked as a server at Pizza Hurt for eight years.

The ALJ posed the following hypothetical to the vocational expert:

> An individual of [Plaintiff's] age, educations and work experience
> who has the following residual functional capacity….assume that
> the individual would be able to perform light work as that is defined
> in the Social Security regulations, except the individual can never
> climb ladders, ropes or scaffolds.   Could occasionally crouch and
> crawl, could frequently balance, stoop and kneel and the individual
> would need to avoid concentrated exposure to hazards such as
> unprotected heights. And would be able to understand, remember
> and apply information for detailed and less than complex tasks.
> Could concentrate, persist and maintain pace and tolerate changes

for such tasks in a detailed setting.

Tr. 60-61.

The vocational expert testified that the hypothetical individual could work as a server. Tr. 60-61.   The vocational expert then testified that if the hypothetical individual described above could not tolerate working eight hours a day, five days a week on a consistent basis and needed unscheduled breaks and absences "at will", then she could not perform the duties of a server.   Tr. 62.

**Analysis**

Plaintiff argues that the "RFC bears no relationship to [her] inability to perform basic work activities as a result of interstitial cystitis."   Plaintiff argues this point at length and under multiple headings, but the overall contention repeated throughout her brief is that the ALJ should have included Plaintiff's frequent bathroom breaks (25 plus in one day) as part of the RFC.   Plaintiff cites nothing in support of this argument.

The ALJ acknowledged Plaintiff's testimony regarding her urinary urgency, and one of the two hypotheticals posed to the vocational expert accounted for the 25+ breaks that Plaintiff claimed she needs in one day.   Tr. 23, 62.   The ALJ did not find Plaintiff's testimony regarding the bathroom breaks to be credible, noting that it was not supported by the medical evidence.   Tr 29.   This Court will not remand on the basis of the ALJ's credibility determination unless the record reflects the determination was "patently wrong."   *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2016).   The medical evidence in the record reflects that, after Plaintiff's July 2023 InterStim procedure, she reported significant improvement and only "some" urgency.   Nine months later, Plaintiff testified to the ALJ that she still had to void 25+ times in one day.   Noticeably absent in

Plaintiff's brief is citation to any evidence in the record that indicates the ALJ was "patently wrong" for not finding this testimony to be credible.   Plaintiff's lengthy argument on this topic is simply an extended invitation to substitute the Court's judgment for the ALJ's, which is improper.

Plaintiff also argues that the ALJ erred in finding she could perform her past work as a server, based upon her testimony that she was required to lift more than 30-50 pounds at a time while working as a server at Pizza Hut.   The ALJ included in his RFC that Plaintiff could perform "light exertional work", which means lifting no more than 20 pounds at a time.   Plaintiff also argues that she performed managerial duties at Pizza Hut, but the DOT (Dictionary of Occupational Titles) does not account for managerial duties in its description of "server."   These arguments are not well-founded because, as the Commissioner notes, the ALJ did not determine Plaintiff was capable of returning to her specific job at Pizza Hut.   The ALJ simply found she was capable of performing work as a server.

### Conclusion

After careful review of the record as a whole, the Commissioner's final decision denying Plaintiff's application for a period of disability and disability insurance benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: March 20, 2026**

_s/_ _Reona J. Daly_
**Hon. Reona J. Daly**
**United States Magistrate Judge**